(89 South. 857)

## ANDERSON v. CITY OF MONTGOMERY.
### (3 Div. 382.)

(Court of Appeals of Alabama. June 30, 1921.)

1. Waters and water courses ⬅⬤⟹203(5)—City turning water into main belonging to consumer can recover for leakage therefrom.

Where the city at a consumer's request turned the water into a main belonging to the consumer to give fire protection to the latter under a contract that the consumer was to pay a fixed turning charge and a stated amount for all water used, the city could recover from the consumer for water which escaped from a leak in the main.

2. Waters and water courses ⬅⬤⟹203(15)—City ordinance regulating use of water held admissible in action for charges.

In an action by a city to recover from a consumer for water turned into the consumer's main and which leaked therefrom, ordinances adopted by the city under its power to regulate the use of meters and the prices charged for water are admissible.

3. Appeal and error ⬅⬤⟹1052(8)—Admission of ordinances harmless where plaintiff could recover without them.

Whether the city was entitled, under its contract with the consumer, to a directed verdict allowing recovery for water which leaked out from the consumer's main, the admission in evidence of city ordinances regulating the use of meters and the charges for water, if erroneous, was harmless.

Appeal from Circuit Court, Montgomery County; Leon McCord, Judge.

Action by the City of Montgomery against I. O. Anderson to recover for water furnished. Judgment for plaintiff, and defendant appeals. Affirmed.

Ball & Beckwith, of Montgomery, for appellant.

The city is bound by the contract of its superintendent made with Anderson. 31 Cyc. 1245–1263. To give the ordinances the effect here sought would be to give them an extra territorial force. 2 Dillon, Municipal Corporations, § 627 et seq; 2 McQuillin, Mun. Corp. § 654 et seq.; 38 Ind. 49; 109 Cal. 315, 41 Pac. 1093; 22 Mo. 384, 66 Am. Dec. 627; 40 Ill. 301.

Ludlow Elmore, of Montgomery, for appellee.

The city was entitled to pay for the water that went through the meter, regardless of the waste, etc. Section 1230, Code 1907; Acts 1890–91, p. 243; 100 Me. 496, 62 Atl. 136, 1 L. R. A. (N. S.) 963. The superintendent could not bind the city, no delegation of authority being shown. 28 Ala. 507; section 1183, Code 1907; McQuillin, Munic. Corp. §§ 1176 and 1257. The ordinances of the city extended to and governed the subject-matter of the contract. 180 Ala. 322, 60 South. 900; 65 South. 783; section 1230, Code 1907.

BRICKEN, P. J. This was a suit by the city of Montgomery against I. O. Anderson. The complaint was on the common counts and was for the recovery of charges for water which had been furnished by the plaintiff municipality to the defendant. The court gave the affirmative charge requested in writing by plaintiff.

The assignments of error insisted upon by the appellant are the giving of the affirmative charge at the request of plaintiff and the overruling of the objections of the defendant to the introduction in evidence by plaintiff of certain ordinances of the city of Montgomery.

We have examined the record carefully and do not find any errors committed by the lower court. The facts, as shown by the evidence, are clearly set forth in the brief of appellant, from which we quote as follows:

"The substance of the testimony is that the appellant and associates had bought from the city what was known as the Base Hospital at Camp Sheridan, which had been erected and used by the United States, and during that usage the United States had purchased water

---

⬅⬤⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

from the city of Montgomery, which was supplied through a main which belonged to and was laid by the United States; that water was measured by a meter at the corner of Vandiver Park which was a mile or so from the Base Hospital. At the Base Hospital there was a valve which controlled all of the water supplied through the main and distributed over the Base Hospital area. Between the meter and this valve there had been numerous connections which had been abandoned. Some time prior to October 4, 1919, the United States had sold said water main to the city of Montgomery, which in turn sold to Anderson and associates all of the main from the meter to and including the Base Hospital, and Anderson and associates had sold the main to McCrary & Co. and had no interest in it on or after October 4, 1919. The United States had reserved the right to use the main for its water supply to the Base Hospital as long as necessary, and it continued to receive its water supply through said main until October 4, 1919, when it notified the city that it would no longer be responsible for the water service.

"On October 4, 1919, Anderson and his associates took possession of the Base Hospital area, and Anderson made arrangements with the city of Montgomery for water for fire protection at the Base Hospital. W. T. Perry was superintendent of the waterworks and in active control, and chief clerk was one Gilmer. The city had or was about to turn off the water at the meter when he sought to make said arrangements and was informed by said Perry that whatever arrangement he made with Mr. Gilmer would be all right, and he told Gilmer that he did not want the water cut off, but to leave it onto the valve at the Base Hospital so that they could turn it on in case of fire. He told him that they would not need any water for any other purpose, but simply wanted the water left in the main to be used in case of fire and Gilmer told him that this would be done provided he would pay a fee of $3, which was called a turning-on charge, and 10 cents a thousand gallons for whatever he used.

"After this arrangement was made and Anderson paid the $3, Mr. Perry went with Anderson to read the meter at the fair grounds, and then they rode on to the valve at the Base Hospital, and Mr. Perry told Anderson that, as the valve leaked, he had better send out and have it packed.

"The evidence was undisputed that Anderson and his associates did not use any water, and that the valve at the Base Hospital was never turned on.

"About November 20th the meter showed that about 4,923,000 gallons of water had passed through it, and the city rendered its bill for that amount, which Anderson refused to pay, and immediately notified the city to turn off the water at the meter, which was done.

"There is no dispute about the fact that this water did pass through the meter, and that it did not pass beyond the valve at the Base Hospital, and therefore it follows that it left the main at some point between the meter and the valve. Nobody seemed to know at the time what had become of the water, but a full explanation is contained in the testimony of Anderson and Courtney which showed that the main was laid across Lomax creek, being concealed by the water and the earth, but, when McCrary's men were removing it shortly after the claim was made, they discovered a hole in the joint between two pipes caused by the packing being removed. So far as the evidence goes, there was no other way for the water to escape, and it may be concluded that the water wasted at that point."

[1] It is the contention of the appellant that he was liable only for the water that was actually used by him. However, in this contention we are unable to agree, for it is our opinion, and we so hold, that, when the water was turned into the meter, the defendant was liable for all the water that passed through that meter. The proof shows that the city did not own or control the mains beyond the meter. It complied with its contract when it turned the water into the mains, through the meter, at defendant's request. If the mains were defective and the water was wasted, that was defendant's loss, and not the loss of the city. The defendant requested the water to be turned into the mains, and the city complied with his request. It follows, therefore, that there was no error in giving the affirmative charge requested by plaintiff. It might well be said that, when the water was turned into the mains by the city, at defendant's request, that was within itself a use of the water by defendant. It was certainly turned to his use.

[2, 3] There was no error in overruling the objections to the city ordinances as evidence. The city had a right, by proper ordinances, to regulate the use of meters and the prices at which customers would be charged for water. Those ordinances show such regulations made by the city. But, even if there had been error in admitting the ordinances in evidence, it would have been error without injury, because, without them in evidence, the plaintiff was entitled to the affirmative charge.

There being no error in the record, the judgment of the circuit court is affirmed.

Affirmed.