Rockingham,
No. 5423.

## Ye Cocke and Kettle, Inc.

*v.*

## Seabrook.

Argued November 1, 1966.
Decided November 30, 1966.

*Flynn, Powell & McGuirk* and *Raymond P. Blanchard ( Mr. Blanchard* orally ), for the plaintiff.

*Perkins, Holland & Donovan ( Mr. Robert B. Donovan* orally ), for the defendant.

Wheeler, J. This is a bill in equity seeking a permanent order restraining the defendant from shutting off the water to the plaintiff's premises for failure to pay a charge of $835.31 for water alleged to have been used by the plaintiff from July to November 1963.

Trial by the Court ( *Leahy,* C. J. ) who made the following finding and order: " The Court finds that there was a negligent failure by the agents and servants of the town of Seabrook in permitting the unnecessary usage of water by the Ye Cocke and Kettle, Inc. due to a leak on the premises of the plaintiff motel. The Court has adopted the year 1961 as a guide in establishing a proper charge and finds that the plaintiff motel is indebted to the town for the period from July 6, 1963 to November 6, 1963 in the amount of $230. This amount to be paid forthwith. Upon said payment, the restraining order is to remain in force so far as it relates to the collection of the amount found to be due. "

The defendant's exception to the denial of its motion to set aside the verdict was reserved and transferred.

The only question presented here by the defendant's exception to the denial of its motion to set aside the verdict is whether there was any evidence to support the Court's finding that the defendant was negligent in permitting unnecessary usage of water by the plaintiff due to a leak in a pipe on the plaintiff's premises. *Hardware Mut. Cas. Co.* v. *Hopkins*, 106 N. H. 412, 417.

The parties concede that the defendant town in operating its municipal water department and selling water to customers in the town acts in a proprietary capacity rather than in a governmental capacity.

The plaintiff operates a restaurant and motel in Seabrook and is the largest user of water in the town. It acquired title in March 1963. It was defendant's practice to read customers' water meters once a year, unless otherwise requested. The custom was followed with respect to this meter until 1963 when as a result of litigation over a previous bill a request was made by the plaintiff for more frequent readings and these were taken in July, November and December. The November reading showed a usage of 2,399,600 gallons since the July reading for which plaintiff was billed for $835.31. The plaintiff refused to pay because of the alleged failure of the defendant to use reasonable diligence in discovering the leak in a pipe on its premises.

When defendant's foreman read plaintiff's meter in January 1963 for water used in 1962 he made the comment that he thought they were "using an awful lot of water," and received the answer that there were a number of appliances such as dish-washers, automatic laundries and motel units and was told it had been checked over and that no substantial leaks were found.

On November 6, 1963 the meter was read again. The motel was not in operation but the meter reader could hear water running through the pipe. After some investigating and checking various outlets a valve was turned off and the water stopped. Defendant's foreman testified that a leak in the system could not be detected on the water use recorders at the pumping stations unless it was at least 40,000 gallons per day in excess of normal use. The present owners of the plaintiff's business acquired title in March 1963. In 1961, 2,151,700 gallons were used on the premises and in 1962, 3,364,900 gallons were used. The Novem-

ber 1963 reading showed a use of 4,243,400 gallons for the year.

The chairman of the board of selectmen of Seabrook who, together with the board of water commissioners having jurisdiction over its water system, testified that in mid-summer 1963 he was aware that 1,843,800 gallons had gone through the plaintiff's meter for approximately six months. He did not notify the plaintiff of the increased use since the volume of business and extension of facilities would probably justify it.

The statutory duty of the defendant is found in RSA 374:1 as follows: "Every public utility shall furnish such service and facilities as shall be reasonably safe and adequate and in all other respects just and reasonable."

The evidence is clear that the increased or excessive use of water by the plaintiff occurred through an inch and a half pipe which serviced the west wing of its motel unit. This pipe was beyond defendant's meter. This pipe and the shutoff valve which controlled the flow of water to that part of plaintiff's motel were all on plaintiff's property and under its control.

There is no evidence that the defendant had assumed any obligation to maintain this pipe in good repair, to inspect it for leaks, to notify the plaintiff of any defects in it, or to shut off the valve controlling the flow of water in it when the motel unit was not in use. Nor was there any evidence that any action on defendant's part caused the defective condition which existed in it. The excessive flow of water was eventually stopped by turning this same valve which had always been under plaintiff's control.

It has been stated that "Where the water is taken through a meter, [the patron] is liable for all the water passing through the meter, including water which escapes from a leak in his service pipe and of which he has no benefit." 94 C.J.S., Waters, *par.* 302, *p.* 210. See *Anderson* v. *Montgomery*, 18 Ala. App. 233.

While it is undoubtedly the duty of the defendant here to operate its water system in an ordinary prudent manner, we do not think that under ordinary circumstances that duty extends to checking every private system that shows an increase in the use of water. Furthermore the plaintiff had the duty to use reasonable care to check its own private water system when operations were suspended.

The plaintiff failed to establish any common-law or statutory duty on the defendant pertaining to this excessive flow of water

caused by a leak in plaintiff's pipe on its own premises beyond the pipes and meter controlled by the defendant.

The order therefore is

*Exception sustained; bill dismissed.*

All concurred.